No. 24-_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

YOLANY PADILLA, et al.
Plaintiffs-Appellees,

v.

IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

**DEFENDANTS-APPELLANTS' PETITION FOR
PERMISSION TO APPEAL INTERLOCUTORY ORDER
PURUSANT TO 28 U.S.C. § 1292(b)**

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
SARAH S. WILSON
*Assistant Directors*
LAUREN C. BINGHAM
DAVID KIM
*Senior Litigation Counsel*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 867, Ben Franklin Station
Washington, DC 20044
202-616-4458

# **TABLE OF CONTENTS**

CONTROLLING QUESTIONS OF LAW PRESENTED ........................................2

LEGAL BACKGROUND .......................................................................................3

PROCEDURAL BACKGROUND ...........................................................................6

REASONS THAT THE PETITION SHOULD BE GRANTED .............................8

    I.      The decision involves controlling questions of law, the immediate appeal of which may materially advance the ultimate termination of this case. .............................................................................................8

    II.    There is substantial ground for difference of opinion on whether 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(3) preclude jurisdiction. ....... 11

    III.   There is substantial ground for difference of opinion on whether due process requires bond hearings to noncitizens in expedited removal. ....................................................................................15

CERTIFICATE OF SERVICE ..............................................................................22

CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

## CASES

*Am. Immigration Lawyers Ass'n v. Reno,* (AILA),
   199 F.3d 1352 (D.C. Cir. 2000)........................................................ 3, 15

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006)....................................................................9

*Armstrong v. Squadrito,*
   152 F.3d 564 (7th Cir. 1998) ......................................................10

*Castro v. DHS,*
   835 F.3d 422 (3d Cir. 2016) .......................................................14

*Clark v. Smith,*
   967 F.2d 1329 (9th Cir. 1991) ....................................................18

*DHS v. Thuraissigiam,*
   140 S. Ct. 1959, 1964 (2020) ...............................................1, *Passim*

*Guerrier v. Garland,*
   18 F.4th 304 (9th Cir. 2021) .......................................................19

*Harper v. Young,*
   64 F.3d 563 (10th Cir. 1995) ......................................................10

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018) ........................................................ 5, 6, 16

*Landon v. Plasencia,*
   459 U.S. 21 (1982)........................................................... 16, 17

*Make the Road New York v. Wolf,*
   962 F.3d 612 (D.C. Cir. 2020)......................................................15

*Mendoza Linares v. Garland,*
   51 F. 4th 1146 (9th Cir. 2022) ................................................ 13, 19

i

*Padilla v. Immigration and Customs Enforcement,*
   953 F.3d 1134 (9th Cir. 2020) .......................................................7

*Peery v. Brakke,*
   826 F.2d 740 (8th Cir. 1987) .......................................................10

*Reese v. BP Exploration, Inc.,*
   643 F.3d 681 (9th Cir. 2011) ................................................. 8, 20

*Shunaula v. Holder,*
   732 F.3d 143 (2d Cir. 2013) ........................................................14

*United States ex rel. Knauff v. Shaughnessy,*
   338 U.S. 537 (1950) .....................................................................19

*United States v. Woodbury,*
   263 F.2d 784 (9th Cir. 1959) .........................................................9

## ADMINISTRATIVE DECISIONS

*Matter of M-S-,*
   27 I. & N. Dec. 509 (A.G. 2019) ............................................ 5, 6, 12

*Matter of X-K-,*
   23 I. & N. Dec. 731 (BIA 2005) ....................................................7

## STATUTES

8 U.S.C. § 1103(a)(l) ........................................................................5

8 U.S.C. § 1103(g) ............................................................................5

8 U.S.C. § 1158 .............................................................................3, 4

8 U.S.C. § 1158(c)(1) .....................................................................17

8 U.S.C. § 1159(b) ..........................................................................18

8 U.S.C. § 1182(d)(5)(A) .............................................................5, 6

ii

8 U.S.C. § 1225(b) .................................................................................6

8 U.S.C. § 1225(b)(1) ............................................................ 3, 4, 14, 16

8 U.S.C. § 1225(b)(1)(A)(i) ...................................................................3

8 U.S.C. § 1225(b)(1)(B)(ii) ......................................................5, 16, 18

8 U.S.C. § 1225(b)(1)(B)(iii)(I) ..........................................................4, 5

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) .......................................................18

8 U.S.C. § 1225(b)(1)(C) ......................................................................5

8 U.S.C. § 1229a ...................................................................................4

8 U.S.C. § 1252(a)(2)(A) .......................................................... 1, *Passim*

8 U.S.C. § 1252(a)(2)(A)(ii) ...............................................................11

8 U.S.C. § 1252(a)(2)(A)(iii) ..........................................................5, 13

8 U.S.C. § 1252(a)(2)(A)(iv) .........................................................11, 13

8 U.S.C. § 1252(e)(2) ............................................................................5

8 U.S.C. § 1252(e)(3) ...............................................................1, 2, 11, 13

8 U.S.C. § 1252(e)(3)(A) ....................................................................11

28 U.S.C. § 1292(b) ...................................................................... 1, 2, 8

## **REGULATIONS**

8 C.F.R. § 208.30(f) .............................................................................4

8 C.F.R. § 1003.42(f) ...........................................................................5

8 C.F.R. § 1208.30(g)(2) ......................................................................4

8 C.F.R. § 1208.30(g)(2)(iv)(A)................................................................4

## **MISCELLANEOUS**

Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 ............................20

69 Fed. Reg. 48877-01 (Aug. 11, 2004) ..................................................3

87 Fed. Reg. 16022 (Mar. 21, 2022)........................................................3

87 Fed. Reg. 18078 (Mar. 29, 2022) ........................................................3

On remand following the Supreme Court's 2020 order vacating the district court's preliminary injunction in this case, Plaintiffs amended their complaint to again assert a due process right to an immediate bond hearing for a nationwide class of noncitizens who recently entered the country unlawfully. *Padilla v. U.S. Immigration and Customs Enforcement*, No. 2:18-cv-928-MJP (W.D. Wash.), ECF 198. The government moved to dismiss the current complaint on the grounds that (1) the district court lacks jurisdiction to afford the requested relief and (2) the Supreme Court has made clear that individuals at the threshold of entry into this country (like Plaintiffs) have "no entitlement to procedural rights other than those afforded by statute." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020). The district court denied the government's motion to dismiss, ECF 217, but granted the government's motion to certify both issues for interlocutory appeal based on its agreement that substantial grounds for difference of opinion exists on both the jurisdictional and due process questions, ECF 236.

The Court should grant this Petition for an interlocutory appeal under 28 U.S.C. § 1292(b). The application of the jurisdictional bars in 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(3) to Plaintiffs' claims presents a novel issue that has not been addressed by this Court or the Supreme Court, and there are substantial grounds for difference of opinion on the issue. Indeed, the jurisdictional issue is

1

precisely the type of controlling question of law appropriate for interlocutory appeal, and its resolution would materially advance the ultimate termination of the litigation.

The due process claim likewise presents a novel question on which there is substantial ground for difference of opinion, the resolution of which would promptly end this long-running litigation. Both the Supreme Court and this Court remanded proceedings in this case in light of *Thuraissigiam*, which affirms the longstanding principle that due process for noncitizens seeking entry extends only so far as Congress provides. 140 S. Ct. at 1964. And while the district court disagreed as to the scope of that holding, it acknowledged that fair-minded jurists could reach a different conclusion regarding whether it forecloses Plaintiffs' claim that noncitizens in expedited removal are constitutionally entitled to procedures beyond those set out in § 1225(b)(1).

For these reasons, including the importance of the legal questions presented, the Court should grant the petition for an interlocutory appeal under 28 U.S.C. § 1292(b).

## CONTROLLING QUESTIONS OF LAW PRESENTED

(1) Whether 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(3) preclude judicial review of Plaintiffs' claim relating to the implementation of the expedited removal statute, including its mandatory detention provision.

2

(2) Whether binding precedent, including *Thuraissigiam*, forecloses Plaintiffs'
argument that due process grants them the right to bond hearings despite
there being no statutory provision for such a right.

## LEGAL BACKGROUND

1. <u>Expedited removal</u>. Congress has authorized the Department of Homeland
Security (DHS) to expeditiously remove from the United States certain inadmissible
noncitizens. *See* 8 U.S.C. § 1225(b)(1). Under this process—known as expedited
removal—certain noncitizens[1] arriving in the United States or who entered illegally
who lack valid entry documentation or make material misrepresentations shall be
"order[ed] . . . removed from the United States without further hearing or review
unless the alien indicates either an intention to apply for asylum under [8 U.S.C. §
1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C),
(a)(7); *see also Thuraissigiam*, 140 S. Ct. at 1964-67 (discussing expedited removal);
*Am. Immigration Lawyers Ass'n v. Reno* (AILA), 199 F.3d 1352, 1360 (D.C. Cir.
2000) (same). If the noncitizen "indicates either an intention to apply for asylum . . .
or a fear of persecution," the inspecting officer must "refer the alien for" an interview
by an asylum officer. *Id*. § 1225(b)(1)(A)(ii). The asylum officer will then assess
whether the noncitizen has a "credible fear of persecution," meaning "that there is a

---

[1] 69 Fed. Reg. 48877-01, 48879-80 (Aug. 11, 2004); 87 Fed. Reg. 16022 (Mar. 21, 2022).

significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]." *Id*. § 1225(b)(1)(B)(v). If the officer determines that the noncitizen has a credible fear, the officer may refer the noncitizen to removal proceedings under 8 U.S.C. § 1229a. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f).[2] These removal proceedings provide more extensive procedures than expedited removal, *compare id.* § 1229a *with id.* § 1225(b)(1), including a right to appeal to the Board of Immigration Appeals (BIA) and a federal appellate court. *Id.* § 1252(a)(1).

If the asylum officer determines that the noncitizen lacks a credible fear, the noncitizen may seek *de novo* review before an immigration judge (IJ). *Id.* § 1225(b)(1)(B)(iii)(I), (III); *see Thuraissigiam*, 140 S. Ct. at 1965. If the IJ concludes that the noncitizen has a credible fear, the noncitizen is placed into removal proceedings. 8 C.F.R. § 1208.30(g)(2). If the IJ finds that the noncitizen lacks a credible fear, the noncitizen is "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). The Immigration and Nationality Act (INA) precludes further review by the BIA or

---

[2] In March 2022, DHS and the Department of Justice adopted an interim final rule that permits, following a positive credible fear determination, asylum officers to conduct an initial asylum merits interview instead of referring the case for removal proceedings under 8 U.S.C. § 1229a. 87 Fed. Reg. 18078 (Mar. 29, 2022).

any court of the credible fear determination. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f).

2. <u>Detention</u>. Noncitizens who demonstrate a credible fear "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Jennings v. Rodriguez,* 138 S. Ct. 830, 845 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings"). The only exception to § 1225(b)(1)'s detention mandate is found in 8 U.S.C. § 1182(d)(5)(A), which allows DHS to parole noncitizens into the United States for "urgent humanitarian reasons or significant public benefit." *See Jennings*, 138 S. Ct. at 845 (holding that the existence of § 1182(d)(5)(A)'s "express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released").

Following *Jennings,* the Attorney General, exercising his authority under 8 U.S.C. § 1103(a)(l) and (g), referred to himself a case and issued a precedential decision addressing "whether aliens who are originally placed in expedited [removal] proceedings and then transferred to full [removal] proceedings after establishing a credible fear become eligible for bond upon transfer." *Matter of M-S-*, 27 I. & N. Dec. 509, 515 (A.G. 2019). The Attorney General "conclude[d] that such aliens remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States." *Id*. The Attorney General observed that "[t]he

5

conclusion that section [1225] requires detention does not mean that every transferred alien must be detained from the moment of apprehension until the completion of removal proceedings" as the INA has an "express exception": parole for "urgent humanitarian reasons or significant public benefit." *Id.* (citing 8 U.S.C. § 1182(d)(5)(A)). The presence of this "express exception" supports the conclusion that the INA "cannot be read to contain an implicit exception for bond" because "'[t]hat express exception to detention implies that there are no *other* circumstances under which aliens detained under [§ 1225(b)] may be released.'" *Matter of M-S-*, 27 I. & N. Dec. at 517 (quoting *Jennings*, 138 S. Ct. at 844) (emphasis in original).

## PROCEDURAL BACKGROUND

This case, which dates back to 2018, has already come before both this Court and the Supreme Court. The case involves two certified nationwide classes, one of which—the Bond Hearing (BH) Class—is relevant here, and is defined as: "All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within seven days of requesting a bond hearing." ECF 102 at 2. At the time the class was certified, members of the certified class were afforded immigration bond hearings pursuant to

6

*Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), but were not afforded bond hearings on a particular timeline and IJs were not required to record or transcribe the hearings.

After the class was certified, the district court granted Plaintiffs' motion for preliminary injunction, which required the government to: (1) Conduct bond hearings within seven days of request, and release any class member whose detention exceeds that limit; (2) Place the burden of proof on DHS to demonstrate why the class member should not be released; (3) Record the bond hearing and produce the recording or verbatim transcript upon appeal; and (4) Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing. ECF 110.

Shortly thereafter, the Attorney General decided *Matter of M-S-*, which reversed the Board's decision in *Matter of X-K-* and recognized that Plaintiffs are not entitled to bond hearings under the INA. The government sought to vacate the injunction in light of the decision, and Plaintiffs amended their complaint, and sought to modify the injunction. ECF 114, 130, 131. The Court denied the government's motion, and modified the injunction to find that § 1225(b)(1)(B)(ii) violates the Constitution. ECF 149. The government appealed. This Court affirmed in part; and vacated and remanded in part, holding that Plaintiffs have a due process right to bond hearings, but remanding for further findings with respect to the particular procedures due. *Padilla v. Immigration and Customs Enforcement*, 953

F.3d 1134 (9th Cir. 2020), *cert. granted Immigration and Customs Enforcement v. Padilla*, 141 S. Ct. 1041 (2021). The Government petitioned for a writ of certiorari, and the Supreme Court granted the petition, vacated, and remanded for further proceedings in light of *Thuraissigiam*. *Id.* at 1041-42. This Court remanded to the district court with instructions to vacate the injunction. ECF 182. Back in district court, Plaintiffs again amended their complaint but continued to assert the same bond hearing claims, and the government moved to dismiss. The district court denied the motion, but certified the same issues for interlocutory appeal. ECF 236.

### REASONS THAT THE PETITION SHOULD BE GRANTED

In deciding whether to grant permission to appeal under 28 U.S.C. § 1292(b), this Court considers whether the district court's order "involves a controlling question of law as to which there is substantial ground for difference of opinion," from which an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Reese v. BP Exploration, Inc.*, 643 F.3d 681 (9th Cir. 2011). If the Court finds that it has jurisdiction pursuant to § 1292(b), it may review de novo the district court's denial of the government's motion to dismiss. *See Reese*, 643 F.3d at 690.

**I.    The decision involves controlling questions of law, the immediate appeal of which may materially advance the ultimate termination of this case.**

The resolution of the government's motion to dismiss raises two controlling questions of law. The first is whether 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(3) bar

review of Plaintiffs' bond hearing claim because it challenges the expedited removal statute. This Court refers to jurisdiction as a "controlling question of law," given its potential to "end the lawsuit" "if decided in favor of the appellant." *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959). Indeed, as a threshold issue, subject matter jurisdiction must exist from the outset of a case, and "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court [must] dismiss the action." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). As the district court noted in certifying the case, "if the Ninth Circuit agrees with Defendants that the Court lacks subject matter jurisdiction, then the Parties and Court will avoid spending their limited resources in litigating a matter that should not be before this Court" and resolving the issue of jurisdiction "now rather than after the case has concluded, will materially advance resolution of the case." ECF 236 at 4. Thus, if this Court were to reverse the district court's determination that it has subject matter jurisdiction, that would promptly end this litigation—making the jurisdiction a controlling question "which, if answered differently on appeal, would terminate the case." *Woodbury*, 263 F.2d at 787.

Likewise, the issue regarding whether due process guarantees bond hearings to noncitizens detained pursuant to § 1225(b)(1)(B)(ii) is a controlling question of law. There is no doubt that the constitutionality of the expedited removal procedures is a legal question, and "a determination of whether Plaintiffs have the underlying

9

rights is a question that can be determined on the allegations presented in the operative complaint." ECF 236 at 4; *see, e.g.*, *Peery v. Brakke*, 826 F.2d 740, 743 (8th Cir. 1987) (whether plaintiff "received all the process constitutionally due . . . is purely a question of law"); *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995) ("The identification of the liberty interests that are protected by the Due Process Clause is a question of federal constitutional law."); *Armstrong v. Squadrito*, 152 F.3d 564, 571 (7th Cir. 1998) (holding that whether due process confers a particular right "defines the scope of constitutional protections, it is a question of law, not one of fact"). That legal question is also controlling in this litigation: if there is no protected liberty interest at stake then Plaintiffs' claim necessarily fails. A reversal of the district court's order on that front would allow for prompt dismissal of the entire case. The district court agreed, noting that "should the Ninth Circuit agree with Defendants that Plaintiffs lack the constitutional rights they seek to vindicate through this action, then the parties and Court would save substantial resources and avoid unnecessary litigation by having that question answered now rather than at the conclusion of the case." ECF 236 at 4. Even if this Court does not conclude that the case must be dismissed, appeal would allow it to clarify the scope of *Thuraissigiam* and thus delineate clear bounds of discovery in the district court—the value of which the district court recognized by staying proceedings pending appeal as "an efficient means of avoiding wasted judicial and party resources." ECF 236 at 4.

## II.     There is substantial ground for difference of opinion on whether 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(3) preclude jurisdiction.

Defendants have argued that 8 U.S.C. § 1252(a)(2)(A) forecloses jurisdiction, and to the extent any court is authorized to review Plaintiffs' claims, it would be the District Court for the District of Columbia consistent with § 1252(e)(3). The statute provides that "notwithstanding any other provision of law" and "except as provided in subsection (e)," no court has jurisdiction over any challenge to "decision[s] by the [Secretary of Homeland Security] to invoke" the expedited removal provisions or to review any "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(ii), (iv). Section 1252(e), in turn, provides that "[j]udicial review of determinations under section 1225(b) of this title *and its implementation* is available in an action instituted in the United States District Court for the District of Columbia." 8 U.S.C. § 1252(e)(3)(A) (emphasis added); *see id.* § 1252(e)(3)(A)(ii) (stating that such review covers determinations of "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the [Secretary] to implement such section, is not consistent with application provisions of this subchapter or is otherwise in violation of law"). Put simply, any regulation, rule, or policy implementing § 1225(b)(1) may be challenged, if at all, only in the District Court for the District of Columbia.

11

The district court made two points in finding jurisdiction. First, the court reiterated its denials of Defendants' previous motions to dismiss and for reconsideration, stating: "The gravamen of Plaintiffs' lawsuit is that Defendants have not adopted any formal procedure or policy regarding when . . . the bond hearings of which they complain will be held; hence the issue of impermissible 'indefinite detention.'" ECF 217 at 8 (quoting Order Denying Mot. for Reconsideration at 2 (ECF 100)). But this is not an accurate characterization of the Fourth Amended Complaint, which challenges § 1225(b)(1)(B)(ii) itself as interpreted by *Matter of M-S-*, 27 I. & N. Dec. 509, which Plaintiffs themselves describe as a "*policy* of not providing bond hearings to class members." ECF 198, ¶ 148 (emphasis added); *see id.*, ¶ 61 ("Pursuant to *Matter of M-S-*, Defendants have a policy and practice of denying bond hearings to noncitizens seeking protection who are apprehended after entering without inspection . . . ."). *Matter of M-S-* is a straightforward interpretation of § 1225(b)(1)(B)(ii), with the Attorney General squarely interpreting the "statutory text" to conclude that "all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond." 27 I. & N. Dec. at 515, 518-19. As a result, Plaintiffs plainly seek review of "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)" contrary to § 1252(a)(1)(A)(iv).

Second, the district court relied on *Jennings* to conclude that it has jurisdiction. In *Jennings*, the Supreme Court analyzed § 1252(b)(9), a provision channeling "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" into judicial review of a final order of removal. The Supreme Court "assume[d] for the sake of argument" that the detention is an "action taken" "to remove the noncitizen from the United States." *Id*. at 840. The Supreme Court then turned to the question of whether the detention challenge "arises from" actions taken to remove members of the class. Without fully defining "arises from," the Supreme Court determined that the claims are distinct from removal because the class "is not challenging the decision to detain them in the first place or to seek removal; and they are not . . . challenging any part of the process by which their removability will be determined." *Id.* at 840-841.

The *Jennings* holding is not relevant here. Sections 1252(a)(2)(A) and 1252(e)(3) are distinct provisions covering a different category of claims. Section 1252(a)(2)(A)(iv) does not use the phrase "arising from" at all, and § 1252(a)(2)(A)(iii) more expansively bars "claim[s] arising from *or relating to* the *implementation or operation of* an order of removal pursuant to section 1225(b)(1) of this title" (emphasis added). *See also Mendoza Linares v. Garland*, 51 F. 4th 1146, 1155 (9th Cir. 2022) ("§ 242(a)(2)(A)'s general prohibition on judicial review covers the 'procedures and policies' that have been adopted to 'implement' the expedited

13

removal process; the decision to 'invoke' that process in a particular case; the 'application' of that process to a particular noncitizen; and the 'implementation' and 'operation' of any expedited removal order."). Finally, even if any of these provisions were limited to the same set of claims covered by § 1252(b)(9), the claims here meaningfully differ from the claims in *Jennings,* which were triggered only after detention continued for a *prolonged* period such that detention and the decision to initiate proceedings were no longer linked. Here, a class member's immigration processing and detention are provided for in the same statute—8 U.S.C. § 1225(b)(1), and Plaintiffs argue that class members become immediately eligible for bond hearings upon having their case transferred to § 240 removal proceedings. Thus, the claims here are directly tied to the decision to initiate removal proceedings in a way that the claims in *Jennings* were not.

Moreover, other courts have reached different conclusions when construing claims involving § 1225(b), underscoring the "substantial ground for difference of opinion." *See, e.g.*, *Castro v. DHS*, 835 F.3d 422, 427 (3d Cir. 2016) ("Section 1252(e) … provides jurisdiction to the District Court for the District of Columbia to review …. challenges to the constitutionality of any provision of the expedited removal statute."); *Shunaula v. Holder*, 732 F.3d 143, 146-47 (2d Cir. 2013) ("§ 1252(e)(3) provides for review of constitutional challenges to the validity of the expedited removal system . . . only in the United States District Court for the District

of Columbia."). The constitutionality of a critical provision of the expedited removal system—detention under § 1225(b)(1)(B)(ii)—is exactly what is at issue in this case. *See AILA*, 199 F.3d at 1358 ("The statute permits judicial review of the 'implementation' of 8 U.S.C. § 1225(b)" "only in the United States District Court for the District of Columbia."). Congress channeled all challenges to agency actions, rules, or policies implementing § 1225(b)(1) to the District of Columbia, and that limitation applies regardless of whether a plaintiff challenges a discrete expedited removal action particular to him or a systemwide implementation of the expedited removal statute. *See Make the Road New York v. Wolf*, 962 F.3d 612, 627 (D.C. Cir. 2020) (§ 1252(e)(3) applies to challenges to procedures and policies adopted to implement the expedited removal statute).

## III. There is substantial ground for difference of opinion on whether due process requires bond hearings to noncitizens in expedited removal.

The district court ruled that Plaintiffs had sufficiently alleged a viable due process claim, finding that the Supreme Court had "consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing." ECF 217 at 13. That determination, however, if not wrong, is at least subject to a substantial difference of opinion, as the district court itself recognized by granting certification.

Due process does not afford any right to a bond hearing in the expedited removal context, let alone a bond hearing within seven days of request. As

15

*Thuraissigiam* explained, noncitizens without substantial ties to the United States who are apprehended shortly after entering illegally have only those due process rights provided by statute. 140 S. Ct. at 1982-83. And members of the bond hearing class are just the kind of individuals "at the threshold of initial entry," who "cannot claim any greater rights under the Due Process Clause." *Id.* at 1964.

To prevail on their claim for bond hearings, Plaintiffs would have to locate that purported right in the expedited removal statute, 8 U.S.C. § 1225(b)(1). But § 1225(b)(1) explicitly mandates detention for "further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii), *see Jennings,* 138 S. Ct. at 845. Plaintiffs thus cannot assert any liberty interest in their release from detention beyond what the statute provides. And without any liberty interest, they have no viable basis on which to insist that a court upend the government's administration of § 1225(b)(1) by imposing new procedures found nowhere in the law. *Thuraissigiam*, 140 S. Ct. at 1982-83; *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application.").

Thus, even after finding that Plaintiffs had sufficiently alleged a possible due process violation, the district court concluded there was enough uncertainty around the issue to allow for a substantial ground for difference of opinion. *Padilla*, ECF

16

No. 236, at 3. In particular, the district court recognized the issue was "novel and complex" and "may well lead to a difference of opinion" in this jurisdiction. *Id.*

Plaintiffs think otherwise. They argue that *Thuraissigiam* "makes clear" that the decision "is about *admission* to the United States, not detention." *Padilla*, ECF 234, at 6. But *Thuraissigiam* does not tether its holding to any forced distinction between admission and detention. On the contrary, *Thuraissigiam* makes broad pronouncements about the due process rights afforded to noncitizens at the threshold of entry, without excluding any cases where the noncitizen might be detained while under expedited removal. *Thuraissigiam*, 140 S. Ct. at 1964 (respondent had "no entitlement to procedural rights other than those afforded by statute"); *id.* at 1982 (for individuals who have never "been admitted into the country pursuant to law, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law (internal quotation marks omitted)).

Of course, *Thuraissigiam* is not devoid of any reference to admission. But that is to be expected: for individuals on the threshold of initial entry, such as the bond hearing class members here, the goal is precisely to be admitted *into* the country— to gain permission to enter and stay. Thus, an individual facing expedited removal is allowed to claim a fear of persecution in pursuit of an ultimate grant of asylum—a form of relief from removal that enables the noncitizen to remain in the United States and possibly even obtain lawful permanent resident status. *See* 8 U.S.C. § 1158(c)(1)

17

(providing that a noncitizen granted asylum may not be removed or returned to their country of nationality); 8 U.S.C. § 1159(b) (setting out requirements for any noncitizen granted asylum to adjust to lawful permanent resident status).

In short, *Thuraissigiam* deals with the limited range of procedural protections available to "noncitizen 'applicants' seeking admission into the United States, whether at a designated port of entry or elsewhere." *Thuraissigiam*, 140 S. Ct. at 1961. That includes this class, who invariably are subject to mandatory detention pursuant to statutory authority. Put simply, admission and detention, at least in the expedited removal context, are necessarily bound up with each other and cannot be separated as a conceptual or practical matter. As this Court has held, "[a]n alien's freedom from detention is only a variation on the alien's claim of an interest in entering the country." *Clark v. Smith*, 967 F.2d 1329, 1331 (9th Cir. 1991). *Thuraissigiam* itself speaks of the "concomitant[s]" of the power "to decide which aliens to admit," one of which is "the power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 140 S. Ct. at 1982. By narrowly reading *Thuraissigiam* to be purely about admission, Plaintiffs overlook that detention is such a concomitant feature expressly written into the statute. 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV).

None of this is to say *Thuraissigiam* is strictly a case about detention. While the respondent professed to be requesting "an entirely ordinary habeas remedy:

conditional release pending a lawful adjudication," the Supreme Court took that to mean he was seeking a writ directing the government "to provide him a new opportunity to apply for asylum." *Thuraissigiam*, 140 S. Ct. at 1969-70, n.13. The Supreme Court, however, never did what Plaintiffs here purport—that is, draw a rigid distinction between admission and detention and decree that its otherwise expansive holding should be suspended whenever a noncitizen seeking entry was detained. Instead, the Supreme Court simply took care to point out that for what the respondent was fundamentally seeking—i.e., a "meaningful" opportunity to be considered for asylum or other relief from removal—a habeas petition was not the appropriate vehicle, given that habeas "is at its core a remedy for *unlawful* executive detention." *Id.* at 1970-71 (internal quotation marks omitted). That point of clarification does not alter the foundational principle affirmed not only by *Thuraissigiam* but also Supreme Court precedent over the years that a noncitizen "on the threshold of initial entry stands on a different footing" and that "[w]hatever the procedure authorized by Congress is, it is due process as far as" such a noncitizen is concerned. *Id.* 140 S. Ct. at 1982; *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *see also Mendoza Linares*, 51 F.4th at 1148 (noncitizen who "jumped the border fence" had "no constitutional rights regarding his application" because of the "unique constitutional status of arriving aliens with no ties to the United States" (internal quotation marks omitted)); *Guerrier v. Garland*, 18 F.4th

19

304, 310 (9th Cir. 2021) ("in the expedited removal context, a petitioner's due process rights are coextensive with the statutory rights Congress provides").

Because this Court or the Supreme Court has not had the opportunity to consider "this important rule" in light of the specific claim raised in this case, the Court should permit appeal to go forward. *Thuraissigiam*, 140 S. Ct. at 1982. While no contradictory precedent has yet emerged, the Court's "interlocutory appellate jurisdiction does not turn on a prior court's having reached a conclusion adverse to that from which appellants seek relief." *Reese*, 643 F.3d at 688. Rather, "[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.* And contrary precedent is impossible in this case, where there is a certified nationwide class, preventing the percolation of this issue elsewhere. At bottom, Plaintiffs seek to drastically revise the government's deliberate administration of the expedited removal statute, at a time when expedited removal serves a critical function in managing the overwhelming pressures at our nation's border. Given the magnitude of those stakes, the legal questions presented in this appeal are exceedingly important and should be resolved by the Court. Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) ("The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case.").

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*

EREZ REUVENI
SARAH STEVENS WILSON
*Assistant Directors*

By: */s/ Lauren C. Bingham*
     LAUREN C. BINGHAM
     *Senior Litigation Counsel*
     Office of Immigration Litigation
     U.S. Department of Justice, Civil Division
     P.O. Box 878, Ben Franklin Station
     Washington, DC 20044
     Tel.: 202-616-4458
     Email: lauren.c.bingham@usdoj.gov

By: */s/ David Kim*
     DAVID KIM
     *Senior Litigation Counsel*

Dated: March 21, 2024      *Attorneys for Defendants-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2024, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I have served the petition and accompanying exhibits via email on all counsel who have appeared in the district court case.

By: */s/ Lauren C. Bingham*
LAUREN C. BINGHAM
Senior Litigation Counsel
United States Department of Justice
Civil Division

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the limitation of Ninth Circuit Rule 5-2 because it is 20 pages. This brief complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 32 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

By: */s/ Lauren C. Bingham*
LAUREN C. BINGHAM
Senior Litigation Counsel
United States Department of Justice
Civil Division