# <u>Exhibit List</u>

**Exhibit 1 – District Court Order Denying in Part Defendants'
Motion to Dismiss Fourth Amended Complaint**

**Exhibit 2 – Supreme Court Order Granting the Government's Petition
for Certiorari, Vacating the Judgement, and Remanding for Further
Consideration in Light of *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020)**

**Exhibit 3 – Ninth Circuit Order Instructing the District Court to Vacate
the Injunction and Remanding for Further Consideration in Light of
*DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020), *Biden v. Texas*, 142 S. Ct.
2528 (2022), and *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022)**

**Exhibit 4 –District Court Order Certifying Motion to Dismiss
for Interlocutory Appeal**

**Exhibit 1 – District Court Order Denying in Part Defendants'
Motion to Dismiss Fourth Amended Complaint**

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                           AT SEATTLE

10    YOLANY PADILLA, IBIS                 CASE NO. C18-928 MJP
      GUZMAN, BLANCA ORANTES,
11    BALTAZAR VASQUEZ,                    ORDER ON DEFENDANTS'
                                           MOTION TO DISMISS
12                     Plaintiffs,

13            v.

14    U.S. IMMIGRATION AND
      CUSTOMS ENFORCEMENT, et al.,
15
                       Defendants.
16

17

18        This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. No. 200.)

19   Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 202), the Reply (Dkt. No. 204),

20   and all supporting materials, the Court DENIES in part and GRANTS in part the Motion.

21                                    **BACKGROUND**

22        Plaintiffs and the Class they represent are "inadmissible" noncitizens who have come to

23   the United States to seek asylum. After being placed in expedited removal proceedings and

24

1  detained, Plaintiffs have been found to have a credible fear of persecution and their asylum

2  claims were transferred to standard removal proceedings. In June 2018, Plaintiffs filed suit to

3  enforce their right to a bond hearing that complies with the Due Process Clause while they await

4  a determination on their asylum application. Although all four named Plaintiffs were given bond

5  hearings, they fear that they and similarly-situated individuals face the risk of being re-detained

6  and deprived of bond hearings in light of the Attorney General's decision that bond hearings

7  shall no longer be given to asylum seekers similarly situated to Plaintiffs. See Matter of M-S-, 27

8  I. & N. 509 (A.G. 2019).

9          In 2019, the Court issued a nationwide preliminary injunction that required Defendants to

10  provide bond hearings to Plaintiffs and similarly-situated individuals, and set certain procedural

11  requirements consistent with due process. After the Ninth Circuit largely upheld the injunction,

12  the Supreme Court vacated the injunction and remanded the matter to the Ninth Circuit for

13  further consideration in light of its decision in Dep't of Homeland Sec. v. Thuraissigiam, 591

14  U.S. ___, 140 S. Ct. 1959 (2020). The Ninth Circuit then remanded the case to this Court with

15  instructions to vacate the injunction and for further consideration in light of Thuraissigiam and

16  two other Supreme Court decisions. Plaintiffs have now filed their Fourth Amended Complaint

17  through which they continue to seek to enforce their right to bond hearings that comport with due

18  process. Defendants challenge the Court's jurisdiction over such claims and the adequacy of the

19  allegations in light of Thuraissigiam and other precedent.

20          To understand the merits of Defendants' Motion to Dismiss, the Court first examines the

21  case's procedural history before looking at the statutory framework and the factual allegations.

22

23

24

**A.      Procedural History**

The Court initially denied, in part, Defendants' motion to dismiss, and certified two classes of similarly-situated individuals—those seeking a timely credible fear interview (the Credible Fear Class)[1] and those seeking a bond hearing comporting with due process (the Bond Hearing Class). (See Dkt. Nos. 91, 100, 102, 158.) The Court then issued and modified a preliminary injunction, requiring the Executive Office for Immigration Review to: (1) conduct bond hearings within seven days of a request for those in the Bond Hearing Class; (2) satisfy the burden of proof as to why the Bond Hearing Class members should not be released on bond, parole or other conditions; (3) record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and (4) produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing. (See Dkt. Nos. 110, 149.)

Defendants timely appealed and the Ninth Circuit upheld the injunction in large part, but remanded for consideration of whether all of the procedural requirements and the nationwide scope of the injunction were appropriate. Padilla v. Immigr. & Customs Enf't, 953 F.3d 1134, 1140 (9th Cir. 2020), cert. granted, judgment vacated, 141 S. Ct. 1041 (2021). The Supreme Court then vacated the Ninth Circuit's opinion and remanded the matter to the Ninth Circuit for further consideration in light of its decision in Dep't of Homeland Sec. v. Thuraissigiam, ___ U.S. ___, 140 S. Ct. 1959 (2020). Immigr. & Customs Enf't v. Padilla, 141 S. Ct. 1041 (2021). The Ninth Circuit then remanded the case to this Court with "instructions to vacate the preliminary injunction and for further consideration in light of the Supreme Court's decisions in

---

[1] The Credible Fear Class's claims are not relevant to Defendants' Motion to Dismiss, given a pending settlement of that class's claims. (Dkt. Nos. 213, 216.)

1   Biden v. Texas, ___ U.S. ___,142 S. Ct. 2528 (2022), Garland v. Aleman Gonzalez, __ U.S.__,

2   142 S. Ct. 2057 (2022), and . . . Thuraissigiam, 140 S. Ct. 1959 (2020)." Padilla v. Immigr. &

3   Customs Enf't, 41 F.4th 1194 (9th Cir. 2022).

4          Upon receipt of the mandate, the Court vacated the preliminary injunction. (Dkt. No.

5   183.) Plaintiffs then filed their Fourth Amended Complaint, (Dkt. No. 198), and Defendants

6   moved for dismissal of all claims for lack of subject matter jurisdiction and for failure to state a

7   claim. (Dkt. No. 200.) Since then, the Parties settled the credible-fear-related claims, and the

8   Court has set a final fairness hearing on the settlement. (Dkt. No. 216.) The Parties agree that the

9   Motion to Dismiss should only be decided as to the Bond Hearing Class and their bond-hearing-

10  related claims. (Dkt. No. 213.) Accordingly, this Order omits any analysis of the credible fear

11  claims.

12  **B.    Statutory Background**

13         To understand Plaintiffs' particular status within the immigration process, the Court

14  reviews the relevant statutory framework.

15         Plaintiffs are a class of noncitizens who were determined to be inadmissible for entry into

16  the United States under 8 U.S.C. § 1183, and ordered removed through an expedited removal

17  process. 8 U.S.C. § 1225(b). But Plaintiffs exercised their right under 8 U.S.C. §

18  1225(b)(1)(A)(ii) to apply for asylum. A noncitizen indicating an intention to apply for asylum is

19  referred for an interview to determine whether he or she has a credible fear of persecution or

20  torture if returned to their home country (a "credible fear interview"). 8 U.S.C. §

21  1225(b)(1)(A)(ii). Any noncitizen subject to this process "shall be detained pending a final

22  determination of credible fear of persecution, and, if found not to have such a fear, until

23  removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). As the Supreme Court explained, "[i]f the asylum

24

1    officer finds an applicant's asserted fear to be credible, the applicant will receive 'full

2    consideration' of his asylum claim in a standard removal hearing." Thuraissigiam, 140 S. Ct. at

3    1965 (quoting 8 C.F.R. § 208.30(f); citing 8 U.S.C. § 1225(b)(1)(B)(ii)). "Applicants who are

4    found to have a credible fear may also be detained pending further consideration of their asylum

5    applications." Thuraissigiam, 140 S. Ct. at 1965 (citing 8 U.S.C. § 1225(b)(1)(B)(ii)). And until

6    July 2019, noncitizens like Plaintiffs were entitled to bond hearings before an immigration judge,

7    as noncitizens in full removal proceedings usually are. See Matter of X-K-, 23 I. & N. Dec. 731,

8    731 (BIA 2005). After this case began, the Attorney General overruled Matter of X-K-. Matter of

9    M-S-, 27 I. & N. Dec. 509 (2019). The Attorney General interpreted 8 U.S.C. § 1225(b)(1)(B)(ii)

10   to require mandatory detention without bond hearings for asylum seekers who were initially

11   subject to expedited removal but later transferred to full removal proceedings after establishing a

12   credible fear. See Matter of M-S-, 27 I. & N. Dec. at 515–17. Under Matter of M-S-, the only

13   possibility for release available to noncitizens in this category is a discretionary grant of parole

14   by the Department of Homeland Security for "urgent humanitarian reasons or significant public

15   benefit" pursuant to 8 U.S.C. § 1182(d)(5). Id. at 516–17.

16   **C.    Factual Background**

17           Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez filed this

18   class action to challenge, among other things, the government's alleged policy and practice of

19   failing to provide constitutionally-adequate bond hearings for detained asylum seekers who have

20   been found to have a credible fear and whose asylum applications remain pending. Plaintiffs

21   allege they were detained at the border for entering without inspection and placed into expedited

22   removal proceedings. (4AC ¶¶ 62-64, 73-76, 87-90, 105.) But each successfully made showings

23   of credible fear and their asylum applications were placed into standard removal proceedings.

24

1    (Id. ¶¶ 69, 79, 95, 108.) After receiving positive credible fear findings, each Plaintiff was given a

2    bond hearing. (Id. ¶¶ 69-70, 80, 97, 109-10.) At their bond hearings, Plaintiffs were all required

3    to prove they were not a danger or flight risk, and no verbatim transcript or recording of the

4    proceedings was made. (Id. ¶¶ 70-71, 81-84, 98, 111.) Although Padilla and Vasquez were

5    released after posting $8,000 bonds, both Plaintiffs Guzman and Orantes were denied bond with

6    little or no explanation. (Id. ¶¶ 70-71, 82-85, 99-100, 111.) Guzman and Orantes were released

7    from detention only after the government was required to comply with a preliminary injunction

8    in another matter. (Id. ¶¶ 82-85, 102.) All four Plaintiffs aver that they and Class members face

9    the prospect of being re-detained without a bond hearing. (Id. ¶¶ 72, 86, 103, 122, 141.)

10    **ANALYSIS**

11    **A.    Standards of Review**

12    Defendants challenge the Court's subject matter jurisdiction under Rule 12(b)(1). Such

13    challenges may be either "facial" or "factual." "A 'facial' attack accepts the truth of the

14    plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal

15    jurisdiction.'" Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting Safe Air for

16    Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A 'factual' attack, by contrast,

17    contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside

18    the pleadings." Id. Although Defendants fail to label the form of their Rule 12(b)(1) "attack," the

19    Court finds that it is a "facial" challenge that does not contest the truth of any of Plaintiffs'

20    factual allegations. As such, the Court will resolve the challenge "as it would a motion to dismiss

21    under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable

22    inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a

23    legal matter to invoke the court's jurisdiction." Id.

24

1    Defendants also move for dismissal under Rule 12(b)(6), arguing that even if the Court

2    has jurisdiction, Plaintiffs have not stated a claim. (See Defs. MTD at 8.) "A complaint may fail

3    to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts

4    alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th

5    Cir. 2016). In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as

6    true and construe the complaint in the light most favorable to the non-movant. Wyler Summit

7    P'Ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must

8    contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

9    face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550

10   U.S. 544, 570 (2007)).

11   **B.    The Court Has Subject Matter Jurisdiction**

12       Defendants incorrectly argue that two provisions of the Illegal Immigration Reform and

13   Immigrant Responsibility Act (IIRIRA) bar Plaintiffs' claims. Neither provision applies to this

14   action.

15       The first provision Defendants invoke, 8 U.S.C. § 1252(a)(2)(A) is entitled "Matters not

16   subject to judicial review." It contains a subparagraph Defendants cite called "review relating to

17   section 1225(b)(1)", which states:

18       Notwithstanding any other provision of law (statutory or nonstatutory), including section
         2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of
19       such title, no court shall have jurisdiction to review—

20       (i) except as provided in subsection (e), any individual determination or to entertain any
         other cause or claim arising from or relating to the implementation or operation of an
21       order of removal pursuant to section 1225(b)(1) of this title,

22       (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the
         provisions of such section,

23
         (iii) the application of such section to individual aliens, including the determination made
24       under section 1225(b)(1)(B) of this title, or

ORDER ON DEFENDANTS' MOTION TO DISMISS - 7

1    (iv) except as provided in subsection (e), procedures and policies adopted by the Attorney
2    General to implement the provisions of section 1225(b)(1) of this title.

3    8 U.S.C. § 1252(a)(2)(A).

4    The second provision Defendants invoke, 8 U.S.C § 1252(e), is entitled "Judicial review

5    of orders under section 1225(b)(1)," and contains a subparagraph Defendants cite called

6    "Challenges on validity of the system." It reads:

7    Judicial review of determinations under section 1225(b) of this title and its
     implementation is available in an action instituted in the United States District Court for
     the District of Columbia, but shall be limited to determinations of—

     (i) whether such section, or any regulation issued to implement such section, is
     constitutional; or

     (ii) whether such a regulation, or a written policy directive, written policy guideline, or
     written procedure issued by or under the authority of the Attorney General to implement
     such section, is not consistent with applicable provisions of this subchapter or is
     otherwise in violation of law.

12   8 U.S.C. § 1252(e)(3).

13   First, the Court continues to find that § 1252(a)(2)(A) has no application to Plaintiffs'

14   claims. (See Order on Mot. to Dismiss at 6-7 (Dkt. No. 91); Order on Mot. for Reconsideration at

15   2 (Dkt. No. 100).) This provision only applies to the procedures and policies necessary to

16   implement the removal process. Here, Plaintiffs' bond hearing claims do not challenge the

17   removal process—just whether they should be afforded a bond hearing after obtaining a positive

18   credible fear finding. As the Court previously explained: "The gravamen of Plaintiffs' lawsuit is

19   that Defendants have not adopted any formal procedure or policy regarding when . . . the bond

20   hearings of which they complain will be held; hence the issue of impermissible 'indefinite

21   detention.'" (Order Denying Mot. for Reconsideration at 2 (Dkt. No. 100).) The Court finds no

22   reason to reconsider this decision.

1    Second, the Court continues to find that § 1252(e)(3), does not strip the Court of

2    jurisdiction. The Court previously explained that § 1252(e)(3) addresses "challenges to the

3    removal process itself, not to detentions attendant upon that process." (Order Modifying Prelim.

4    Inj. at 10 (Dkt. No. 149).) The Court relied on the Supreme Court's decision in Jennings v.

5    Rodriguez, 138 S. Ct. 830 (2018), which rejected application of a similar jurisdiction-stripping

6    provision to claims challenging the detention process for those facing removal. (Id.) In Jennings,

7    the Supreme Court explained that there is jurisdiction to review the legality of detention under §

8    1225(b) where petitioners were "not asking for review of an order of removal; . . . not

9    challenging the decision to detain them in the first place or seek removal; and . . . not even

10   challenging any part of the process by which their removability will be determined." Jennings,

11   138 S. Ct. at 841. The same logic applies here because Plaintiffs challenge only the

12   constitutionality of their detention, and the relief they seek does implicate the removal system.

13   The Court rejects Defendants' argument and continues to find that it has jurisdiction over the

14   claims regarding bond hearings.

15        The Court DENIES Defendants' Motion as to jurisdiction, and finds that it has subject

16   matter jurisdiction over Plaintiffs' claims.

17   **B.    Plaintiffs Continue to State Valid A Due Process Claim**

18        Defendants primarily argue that Thuraissigiam compels the Court to find that Plaintiffs

19   enjoy only those procedural protections provided for by statute, and that this does not include

20   bond hearings. (See Defs. MTD at 12-13.) Defendants further contend that beyond

21   Thuraissigiam, Plaintiffs have failed to allege a valid substantive or procedural due process

22   claim. The Court finds no merit in any of Defendants' arguments.

23

24

1    **1.    <u>Thuraissigiam</u> does not bar the due process claim**

2    The Court stands unconvinced that the Supreme Court's decision in <u>Thuraissigiam</u>

3    requires dismissal of Plaintiffs' due process claim. Given the distinct claims presented in

4    <u>Thuraissigiam</u>, the Court finds the decision's narrow holding presents no bar to Plaintiffs' claim.

5    In <u>Thuraissigiam</u>, the respondent argued that due process entitled him to an opportunity

6    to reapply for asylum on account of certain alleged defects he identified in the process that led to

7    rejection of his asylum application. 140 S. Ct. at 1968, 1982-83. To understand this claim, the

8    Court first reviews the factual background and procedural posture of the case. Like Plaintiffs in

9    the case before this Court, the respondent in <u>Thuraissigiam</u> was placed into expedited removal

10   proceedings after being detained upon his entry to the United States where he was found

11   inadmissible. <u>Id.</u> at 1967. Like Plaintiffs here, the respondent applied for asylum. <u>Id.</u> But unlike

12   Plaintiffs here, the respondent in <u>Thuraissigiam</u> was unable to convince the immigration officer,

13   a supervising officer, or immigration judge that he faced a credible fear of persecution if returned

14   to his home country. <u>Id.</u> at 1967-68. Having failed to present a bona fide asylum claim, the

15   respondent was subject to "remov[al] from the United States without further hearing or review."

16   8 U.S.C. § 1225(b)(1)(B)(iii)(I); <u>Thuraissigiam</u>, 140 S. Ct. at 1968. The respondent then filed a

17   habeas petition through which he sought a writ of habeas corpus, an injunction, or writ of

18   mandamus directing the Department of Homeland Security to provide him a "new opportunity to

19   apply for asylum and other applicable forms of relief." <u>Thuraissigiam</u>, 140 S. Ct. at 1968. He

20   argued that he had been deprived of a meaningful opportunity to establish his credible fear

21   claims and that the wrong standards were applied. <u>Id.</u> But the respondent "made no mention of

22   release from custody." <u>Id.</u>

23

24

The Supreme Court in <u>Thuraissigiam</u>, rejected respondent's due process claim. The Court explained that "aliens who arrive at ports of entry . . . are 'treated' for due process purposes 'as if stopped at the border.'" <u>Id.</u> at 1982 (quoting <u>Shaughnessy v. United States ex rel. Mezei</u>, 345 U.S. 206, 215 (1953)). And as to any due process rights concerning their efforts to gain admission, these individuals possess "only those rights regarding admission that Congress has provided by statute." <u>Id.</u> at 1983. The Court based this conclusion on the proposition that "[t]he power to admit or exclude aliens is a sovereign prerogative" and that "the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." <u>Id.</u> at 1982 (citation and quotation omitted). With these principles in mind, the Court held that as to his request for admission into the United States, the respondent had only "a right to a 'determin[ation]' whether he had 'a significant possibility' of 'establish[ing] eligibility for asylum.'" <u>Id.</u> at 1983 (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v)). Having been "given that right," the respondent was entitled to no more process in his efforts to gain admission to the United States. <u>Id.</u>

Defendants ask the Court to extract from <u>Thuraissigiam</u> a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such a conclusion is untethered to the claim in <u>Thuraissigiam</u> and the Court's reasoning. <u>Thuraissigiam</u>'s discussion of due process is necessarily constrained to challenges to admissibility to the United States. This was the sole claim presented and the respondent expressly asked for a chance to reapply for asylum and admission. The Court then exclusively analyzed whether a noncitizen applicant for admission has any "rights regarding admission" beyond those set by Congress. <u>Thuraissigiam</u>,

1    140 S. Ct. at 1982-83. The Court answered no broader question. Moreover, the Court justified its

2    rejection of respondent's argument on the theory that "the Constitution gives the political

3    department of the government plenary authority to decide which aliens to <u>admit</u>, and a

4    concomitant of that power is the power to set the procedures to be followed in determining

5    whether an alien should be <u>admitted</u>." <u>Id.</u>, 140 S. Ct. at 1982 (citation and quotation omitted)

6    (emphasis added). The Court's holding explicit constrains itself to determining only whether

7    those challenging the admission process have due process rights: "an alien in respondent's

8    position has only those rights <u>regarding admission</u> that Congress has provided by statute." <u>Id.</u> at

9    1983 (emphasis added). Defendants present no cogent reason why the Court should extend this

10   limited holding to any noncitizen within the immigration process regardless of the legal

11   challenge presented. Defendants' argument fails to explain how such an application of

12   <u>Thuraissigiam</u>'s limited holding tracks of the facts and claims presented in <u>Thuraissigiam</u>, the

13   Supreme Court's reasoning, or the Court's explicit language limiting its holding to "rights

14   regarding admission.

15        The holding in <u>Thuraissigiam</u> does not foreclose Plaintiffs' due process claims which

16   seek to vindicate a right to a bond hearing with certain procedural protections. Unlike respondent

17   in <u>Thuraissigiam</u>, Plaintiffs do not challenge the admission process in any way or assert a right to

18   remain in the United States. They merely seek a chance to apply for release on bond pending

19   resolution of their bona fide asylum claims that remain to be resolved in standard removal

20   proceedings. Nothing in <u>Thuraissigiam</u> suggests Plaintiffs lack such a due process right. As such,

21   the Court DENIES the Motion as to this issue.

22        **2.      Plaintiffs adequately allege a Due Process claim**

23        Plaintiffs have sufficiently alleged a substantive and procedural due process claim.

24

1       <u>Substantive Due Process</u>

2         The Court finds that Plaintiffs have alleged a right to substantive due process to bond

3 hearings. As the Ninth Circuit concluded in affirming the Court's preliminary injunction, "all

4 persons in the United States—regardless of their citizenship status, means or legality of entry, or

5 length of stay—are entitled to the protections of the Due Process Clause." <u>Padilla</u>, 953 F.3d at

6 1142 (citing <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001)). As the Court in <u>Zadvydas</u> explained,

7 "the Due Process Clause applies to all 'persons' within the United States, including aliens,

8 whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693. Due

9 process protects against immigration detention that is not reasonably related to the legitimate

10 purpose of effectuating removal or protecting against danger and flight risk. <u>See</u> <u>id.</u> at 690-91.

11 And the Supreme Court has consistently held that non-punitive detention violates the

12 Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized

13 hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's

14 legitimate goals. <u>See</u> <u>United States v. Salerno</u>, 481 U.S. 739, 750–51 (1987); <u>Foucha v.</u>

15 <u>Louisiana</u>, 504 U.S. 71, 79 (1992); <u>Kansas v. Hendricks</u>, 521 U.S. 346, 360, 364 (1997).

16         As Plaintiffs concede, there is one exception to this line of Supreme Court cases: <u>Demore</u>

17 <u>v. Kim</u>, 538 U.S. 510 (2003). In <u>Demore</u>, the Supreme Court rejected a due process challenge to

18 mandatory detention of noncitizens who had committed certain enumerated offenses under 8

19 U.S.C. § 1226(c). <u>Id.</u> at 517, 523, 527-30. The Court agrees with Plaintiffs that <u>Demore</u> remains

20 distinguishable from the claims presented here. First, the Court in <u>Demore</u> held that the "narrow"

21 detention policy before it "during a limited period" necessary to arrange for removal was

22 reasonably related to the government's purpose of effectuating removal and protecting public

23 safety. 538 U.S. at 526-28. The Court did not apply a categorical bar to all noncitizens facing

24

1   removal. Instead, it considered a narrow category of noncitizens who had committed certain

2   enumerated crimes and found that the voluminous Congressional record before it justified

3   denying bail given the substantial rate at which such individuals either reoffended or absconded.

4   Id. at 518-20. Here, Defendants can point to no similar public safety concerns or flight risk that

5   might apply to those, like Plaintiffs, with bona fide asylum claims and who desire to remain in

6   the United States. Second, the length of detention in Demore was far briefer than the length of

7   detention at issue here. In Demore, the mandatory detention pending removal was 47 days in

8   85% of the cases and about four months for those 15% of cases that were appealed to the BIA.

9   Id. at 529-30. Here, based on albeit dated information, Plaintiffs and the Class face a median

10  time of five to six months for adjudication of their claim by an immigration judge, nearly a year

11  for cases appealed to the BIA, and still longer for judicial review. See Declaration of David

12  Hausman ¶ 8 (Dkt. No. 132); Admin Off. Of U.S. Courts, U.S. Court of Appeals – Judicial

13  Caseload Profile (Dec. 31, 2022)

14  https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile1231.2022.pdf; 4AC

15  ¶ 59.) Nothing in Demore suggests that such a lengthy detention would be justified to keep such

16  individuals in custody particularly where there is no evidence presently before the Court that

17  Plaintiffs and the Class present a particular risk of flight or danger.

18          Procedural Due Process

19          The Court finds Plaintiffs have sufficiently alleged a procedural due process claim.

20          "Procedural due process imposes constraints on governmental decisions which deprive

21  individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of

22  the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "Freedom

23  from imprisonment—from government custody, detention, or other forms of physical restraint—

24

1    lies at the heart of the liberty that Clause protects." <u>Zadvydas</u>, 533 U.S. at 690. Non-punitive

2    detention in the immigration context violates the Due Process Clause unless "a special

3    justification . . . outweighs the 'individual's constitutionally protected interest in avoiding

4    physical restraint.'" <u>Zadvydas</u>, 433 U.S. at 690 (quoting <u>Hendricks</u>, 521 U.S. at 356). "In the

5    context of immigration detention, it is well-settled that 'due process requires adequate procedural

6    protections to ensure that the government's asserted justification for physical confinement

7    outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"

8    <u>Hernandez v. Sessions</u>, 872 F.3d 976, 990 (9th Cir. 2017) (quoting <u>Singh v. Holder</u>, 638 F.3d

9    1196, 1203 (9th Cir. 2011)). So while "[t]he government has legitimate interests in protecting the

10   public and in ensuring that non-citizens in removal proceedings appear for hearings, . . . any

11   detention incidental to removal must 'bear[] [a] reasonable relation to [its] purpose.'" <u>Hernandez</u>,

12   872 F.3d at 990 (quoting <u>Zadvydas</u>, 533 U.S. at 690). To satisfy procedural due process, non-

13   punitive detention must be accompanied by a prompt individualized hearing before a neutral

14   decisionmaker to ensure the detention serves the government's legitimate goals. <u>See, e.g.</u>,

15   <u>Salerno</u>, 481 U.S at 750-51; <u>Foucha</u>, 504 U.S. at 79; <u>Hendricks</u>. 421 U.S. at 350, 364; <u>Zadvydas</u>,

16   533 U.S. at 692.

17        Plaintiffs continue to allege a viable procedural due process claim. First, they have

18   alleged a substantial liberty interest in being free from confinement and an interest in preventing

19   arbitrary detention. Second, Plaintiffs have alleged that the parole process available to them

20   under 8 U.S.C. § 1182(d)(5)(A) is not a constitutionally adequate substitute for a bond hearing

21   particularly since it does not test the necessity of detention. The parole process does not afford

22   the noncitizen an in-person adversarial hearing before a neutral decisionmaker where he or she

23   may present witness testimony or evidence. <u>See</u> 8 C.F.R. § 212.5. Additionally, the ICE

24

1  detention officer need not make any factual findings or provide their reasoning, and there is no

2  apparent right to an administrative appeal. This process is not an adequate substitute for a bail

3  hearing to test the legitimate need for continued detention. See Zadvydas, 533 U.S. at 692.

4  Lastly, Plaintiffs have sufficiently alleged that the government lacks a legitimate interest in

5  denying bond hearings before a neutral decisionmaker to detained noncitizens with pending bona

6  fide asylum applications. It is true that "[t]he government has legitimate interests in protecting

7  the public and in ensuring that non-citizens in removal proceedings appear for hearings . . . ."

8  Hernandez, 872 F.3d at 990. But accepting Plaintiffs' allegations as true, the government's

9  interest in protecting the public or avoiding additional administrative burdens do not outweigh

10  the countervailing liberty interest at stake. At this juncture, the Court finds that the Plaintiffs

11  have alleged a valid procedural due process claim and DENIES Defendants' Motion as to Count

12  I.

13        The Court notes that this Order does not resolve whether Plaintiffs are entitled to a bond

14  hearing within the seven day time-frame they have requested in their complaint. Plaintiffs have

15  sufficiently alleged that they are entitled to a bond hearing in an expedited fashion. See Order on

16  Motion to Dismiss at 13-14 (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1177 (N.D. Cal.

17  2017). The Court is not required to determine at this stage the specific time frame that applies or

18  is required. Further development of the factual record is necessary to make any affirmative

19  determination as to the precise timeframe or other parameters. At this point, the Court merely

20  finds the claims sufficiently alleged.

21  **C.     APA Claims**

22        The Court agrees with Plaintiffs that their APA claims related to the bond hearing

23  procedural safeguards (Counts II and VI) survive dismissal. Defendants sought dismissal of these

24

1    claims on the theory that Plaintiffs lack a due process right to bond hearings. (Defs. MTD at 22.)

2    Because Plaintiffs have shown a valid due process right to prompt bond hearings before neutral

3    decisionmakers, the attendant APA claims are adequately alleged. Defendants also argue that the

4    there is no final agency action to review. (Id.) But the Court remains convinced that the

5    "procedural defects alleged by [Plaintiffs] are part and parcel of the bond hearing, which is

6    indisputably a 'final agency action' from which legal consequences flow." (Order on MTD at 18

7    (Dkt. No. 91).) The Court therefore DENIES the Motion as to Counts II and VI.

8        But two of Plaintiffs' APA claims must be dismissed. First, Plaintiffs concede they

9    included Count V in the Fourth Amended Complaint "to preserve it for review," given that the

10   Court has previously dismissed it. (Pls. Opp. at 22.) Plaintiffs offer no reason why this claim

11   should survive dismissal and the Court again DISMISSES this claim for the same reasons as set

12   forth in the original Order on the MTD. (See Order on MTD at 16-18.) Second, Plaintiffs have

13   withdrawn their APA challenge to the Matter of M-S- set out in Count III and the Court

14   DISMISSES this claim. (Pls. Opp. at 2 n.1.)

15                               **CONCLUSION**

16       The Court has jurisdiction to hear Plaintiff's claims. And the Court remains convinced

17   that Plaintiffs have alleged a viable due process claim and related claims under the APA. The

18   Court finds that the Supreme Court's decision in Thuraissigiam does not undermine Plaintiffs'

19   due process claim. And the Court finds that Plaintiffs have adequately alleged an actionable

20   substantive and procedural due process claim. The Court DENIES the Motion as to Counts I, II,

21   and VI. But the Court GRANTS the Motion as to Counts II and V, and DISMISSES them.

22       \\

23       \\

24

ORDER ON DEFENDANTS' MOTION TO DISMISS - 17

The clerk is ordered to provide copies of this order to all counsel.

Dated December 4, 2023.

Marsha J. Pechman
United States Senior District Judge

**Exhibit 2 – Supreme Court Order Granting the Government's Petition for Certiorari, Vacating the Judgement, and Remanding for Further Consideration in Light of *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020)**

(ORDER LIST: 592 U.S.)

MONDAY, JANUARY 11, 2021

CERTIORARI -- SUMMARY DISPOSITIONS

20-234      IMMIGRATION AND CUSTOMS, ET AL. V. PADILLA, YOLANY, ET AL.

            The petition for a writ of certiorari is granted.  The
            judgment is vacated, and the case is remanded to the United
            States Court of Appeals for the Ninth Circuit for further
            consideration in light of *Department of Homeland Security*
            v. *Thuraissigiam*, 591 U. S. ___ (2020).

20-306    )  OLAN, ROBERT, ET AL. V. UNITED STATES
          )
          )  The petition for a writ of certiorari is granted.  The
          )
          )  judgment is vacated, and the case is remanded to the United
          )
          )  States Court of Appeals for the Second Circuit for further
          )
          )  consideration in light of *Kelly* v. *United States*, 590 U. S. ___
          )
          )  (2020).
          )
20-5649   )  BLASZCZAK, DAVID V. UNITED STATES

            The motion of petitioner for leave to proceed *in forma*
            *pauperis* and the petition for a writ of certiorari are granted.
            The judgment is vacated, and the case is remanded to the United
            States Court of Appeals for the Second Circuit for further
            consideration in light of *Kelly* v. *United States*, 590 U. S. ___
            (2020).

20-5123     HAYES, CARDELL A. V. LOUISIANA

20-5363     JONES, REGINALD V. LOUISIANA

            The motions of petitioners for leave to proceed *in forma*
            *pauperis* and the petitions for writs of certiorari are granted.

1

**Exhibit 3 – Ninth Circuit Order Instructing the District Court to Vacate the Injunction and Remanding for Further Consideration in Light of *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020), *Biden v. Texas*, 142 S. Ct. 2528 (2022), and *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022)**

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| YOLANY PADILLA; IBIS GUZMAN; BLANCA ORANTES; BALTAZAR VASQUEZ,<br><br>*Plaintiffs-Appellees*,<br><br>v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; TAE D. JOHNSON, Acting Director of ICE; ALEJANDRO MAYORKAS, Secretary of DHS; CHRIS MAGNUS, Commissioner of CBP; UR M. JADDOU, Director of USCIS; MARC J. MOORE, Seattle Field Office Director, ICE; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; MERRICK B. GARLAND, Attorney General, United States Attorney General; LOWELL CLARK, Warden of the Northwest Detention Center in Tacoma, Washington; CHARLES INGRAM, Warden of the Federal Detention Center in SeaTac, Washington; | No. 19-35565<br><br>D.C. No. 2:18-cv-00928-MJP<br><br>ORDER |

2                          PADILLA V. ICE

DAVID SHINN, Director; JAMES
JANECKA, Warden of the Adelanto
Detention Facility,
              *Defendants-Appellants*,

                    and

U.S. DEPARTMENT OF HEALTH &
HUMAN SERVICES, FKA Department
of Social Services; OFFICE OF
REFUGEE RESETTLEMENT; XAVIER
BECERRA, Secretary of HHS; SCOTT
LLOYD, Director of ORR; CHRIS
MAGNUS, Commissioner of CBP;
ELIZABETH GODFREY, Acting
Director of Seattle Field Office, ICE,
              *Defendants.*

                Filed July 29, 2022

      Before:  Michael Daly Hawkins, Sidney R. Thomas, and
               Bridget S. Bade, Circuit Judges.

                        Order

PADILLA V. ICE                          3

## SUMMARY[*]

### Immigration

Following the Supreme Court's order vacating the judgment of this court, 953 F.3d 1134, and remanding to this court for further consideration in light of *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020), the panel remanded to the district court with instructions to vacate the preliminary injunction and for further consideration in light of the Supreme Court's decisions in *Biden v. Texas*, 142 S. Ct. 2528 (2022), *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022), and *Thuraissigiam*.

### COUNSEL

Lauren C. Bingham (argued), Counsel; Sarah S. Wilson and Erez Reuveni, Assistant Directors; William C. Peachey, Director; Brian Boynton, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Matt Adams (argued), Leila Kang, and Aaron Korthuis, Northwest Immigrant Rights Project, Seattle, Washington; Trina A. Realmuto and Kristin Macleod-Ball, National Immigration Litigation Alliance, Brookline, Massachusetts; Judy Rabinovitz, Michael Tan, and Anand Balakrishnan, ACLU Immigrants' Rights Project New York, New York;

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

4                          PADILLA V. ICE

Emma Winger, American Immigration Council, Washington, D.C.; for Plaintiffs-Appellees.

Alan Schoenfeld and Lori A. Martin, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; Rebecca Arriaga Herche, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Jamil Aslam, Wilmer Cutler Pickering Hale and Dorr LLP, Los Angeles, California; for Amici Curiae Retired Immigration Judges and Board of Immigration Appeals Members.

Erin K. Earl, Julie Wilson-McNerney, and Anna Mouw Thompson, Perkins Coie LLP, Seattle, Washington, for Amici Curiae National Association of Criminal Defense Lawyers, Pretrial Justice Institute, and Center for Legal and Evidence-Based Practices.

Robert W. Ferguson, Attorney General; Andrew R. W. Hughes, Kristin Beneski, and Brendan Selby, Assistant Attorneys General; Office of the Attorney General, Seattle, Washington; Xavier Becerra, Attorney General, Sacramento, California; Phil Weiser, Attorney General, Denver, Colorado; William Tong, Attorney General, Hartford, Connecticut; Kathleen Jennings, Attorney General, Wilmington, Delaware; Karl A. Racine, Attorney General, Washington, D.C.; Clare E. Connors, Attorney General, Honolulu, Hawaii; Kwame Raoul, Attorney General, Chicago, Illinois; Brian E. Frosh, Attorney General, Baltimore, Maryland; Maura Healey, Attorney General, Boston, Massachusetts; Dana Nessel, Attorney General, Lansing, Michigan; Keith Ellison, Attorney General, St. Paul, Minnesota; Aaron D. Ford, Attorney General, Carson City, Nevada; Gurbir S. Grewal, Attorney General; Glenn J. Moramarco, Assistant Attorney General; Marie Soueid, Deputy Attorney General; Office of

PADILLA V. ICE                    5

the Attorney General, Trenton, New Jersey; Hector Balderas, Attorney General, Santa Fe, New Mexico; Peter F. Neronha, Attorney General, Providence, Rhode Island; Ellen F. Rosenblum, Attorney General, Salem, Oregon; Thomas J. Donovan Jr., Attorney General, Montpelier, Vermont; Mark R. Herring, Attorney General, Richmond, Virginia; for Amici Curiae Washington, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, and Virginia.

---

**ORDER**

The Supreme Court has vacated the judgment of this Court, 953 F.3d 1134, and remanded this case to us for further consideration in light of *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020), *see Immigr. & Customs Enf't v. Padilla*, 141 S. Ct. 1041, 1041–42 (2021).

Therefore, we remand this case to the district court with instructions to vacate the preliminary injunction and for further consideration in light of the Supreme Court's decisions in *Biden v. Texas*, 142 S. Ct. 2528 (2022), *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022), and *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020). This order shall constitute the mandate of the Court.

**Exhibit 4 –District Court Order Certifying Motion to Dismiss
for Interlocutory Appeal**

Case 2:18-cv-00928-MJP   Document 236   Filed 03/11/24   Page 1 of 5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTES, BALTAZAR VASQUEZ, | CASE NO. C18-928 MJP |
| Plaintiffs, | ORDER GRANTING MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion to Certify for Interlocutory

Appeal. (Dkt. No. 233.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 234), the

Reply (Dkt. No. 235), and all supporting materials, the Court GRANTS the Motion.

**BACKGROUND**

Defendants ask the Court to certify for interlocutory appeal two issues from the Court's

Order denying their Motion to Dismiss. (Mot. at 1.) Specifically, Defendants ask the Court to

certify the questions of whether: (1) the Court has subject matter jurisdiction over Plaintiffs'

1    claims; and (2) Plaintiffs may pursue constitutional due process claims regarding bond hearings.

2    (id.) The Court does not repeat or review the underlying Order on the Motion to Dismiss, and

3    instead refers the reader to the Order itself, at Docket Number 217.

4                                              **ANALYSIS**

5    **A.      Interlocutory Appeal Proper**

6            Interlocutory appeals are governed by 28 U.S.C. § 1292(b). The law states:

7            When a district judge, in making in a civil action an order not otherwise appealable under
             this section, shall be of the opinion that such order involves a controlling question of law
8            as to which there is substantial ground for difference of opinion and that an immediate
             appeal from the order may materially advance the ultimate termination of the litigation,
9            he shall so state in writing in such order.

10   28 U.S.C. § 1292(b). Under this law, certification is appropriate where there is: (1) a controlling

11   question of law; (2) a substantial ground for difference of opinion on that question; and (3) a

12   likelihood that immediate appeal will materially advance the conclusion of the litigation. See id.

13   "Certification under § 1292(b) requires the district court to expressly find in writing that all three

14   § 1292(b) requirements are met." Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010).

15   Here, the Parties agree that the two questions Defendants identify are controlling issues of law,

16   but they diverge on the latter two factors. The Court reviews them below.

17           **1.      Substantial Ground for Difference of Opinion**

18           "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b),

19   courts must examine to what extent the controlling law is unclear." Id. "Courts traditionally will

20   find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on

21   the question and the court of appeals of the circuit has not spoken on the point, if complicated

22   questions arise under foreign law, or if novel and difficult questions of first impression are

23   presented.'" Id. (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010) (footnotes

24   omitted)). But "when novel legal issues are presented, on which fair-minded jurists might reach

Case 2:18-cv-00928-MJP   Document 236   Filed 03/11/24   Page 3 of 5

1    contradictory conclusions, a novel issue may be certified for interlocutory appeal without first

2    awaiting development of contradictory precedent." <u>Reese v. BP Expl. (Alaska) Inc.</u>, 643 F.3d

3    681, 688 (9th Cir. 2011). "A substantial ground for difference of opinion exists where reasonable

4    jurists might disagree on an issue's resolution, not merely where they have already disagreed."

5    <u>Id.</u>

6         While a close question, the Court agrees with Defendants that both questions present

7    novel legal issues on which fair-minded jurists might reach contradictory conclusions. First,

8    although the Court remains convinced that it has subject matter jurisdiction, it agrees with

9    Defendants that fair minded jurists might disagree. The jurisdictional issues presented appear to

10   be novel and unaddressed by the Ninth Circuit or the Supreme Court. And although the cases on

11   which Defendants rely do not squarely address the jurisdictional issues the Court here analyzed,

12   the cases highlight the possibility that fair-minded jurists may disagree with the Court's

13   conclusion on these similar issues. (<u>See</u> Mot. at 9-10.) Second, the Court also agrees with

14   Defendants that fair-minded jurists might disagree with the Court's determination that the

15   decision in <u>Department of Homeland Security v. Thuraissigiam</u>, 591 U.S. ___, 140 S. Ct. 1959

16   (2020) does not bar Plaintiffs' due process claims. While the Court has not altered its

17   conclusions as to <u>Thuraissigiam</u>, it appreciates that this novel and complex issue may well lead

18   to a difference of opinion at the Ninth Circuit. And while Defendants have not identified any

19   existing authority that squarely supports their arguments, they have identified two recent

20   decisions from the Ninth Circuit suggest some jurists might extend the reasoning in

21   <u>Thuraissigiam</u> to the present dispute. See <u>Mendoza-Linares v. Garland</u>, 51 F.4th 1146 (9th Cir.

22   2022); <u>Guerrier v. Garland</u>, 18 F.4th 304 (9th Cir. 2021). Accordingly, the Court finds the first

23   two considerations under § 1292(b) satisfied.

24

1

     **2.     Immediate Appeal Will Advance this Matter**

2

     The Court also finds that an immediate appeal will materially advance the resolution of

3 this litigation. First, if the Ninth Circuit agrees with Defendants that the Court lacks subject

4 matter jurisdiction, then the Parties and Court will avoid spending their limited resources in

5 litigating a matter that should not be before this Court. Resolving that question now rather than

6 after the case has concluded, will materially advance resolution of the case. Second, should the

7 Ninth Circuit agree with Defendants that Plaintiffs lack the constitutional rights they seek to

8 vindicate through this action, then the parties and Court would save substantial resources and

9 avoid unnecessary litigation by having that question answered now rather than at the conclusion

10 of the case. And while the Court agrees with Plaintiffs that the constitutional claims will require

11 a full factual record for ultimate resolution, a determination of whether Plaintiffs have the

12 underlying rights is a question that can be determined on the allegations presented in the

13 operative complaint. The Court therefore finds this consideration under § 1292(b) satisfied.

14

                   *     *     *

15

     The Court finds that both questions Defendants identify from the Order on the Motion to

16 Dismiss should be certified for interlocutory appeal.  The Court therefore GRANTS the Motion.

17 **B.     Stay Pending Appeal**

18

     The Parties agree that if the Court certifies the interlocutory appeal, this matter should be

19 stayed. The Court agrees with the Parties and STAYS this matter pending the appeal. This is an

20 efficient means of avoiding wasted judicial and party resources.

21

                     **CONCLUSION**

22

     While the Court remains unconvinced that it lacks subject matter jurisdiction or that

23 Plaintiffs cannot pursue their due process claims, it agrees with Defendants that certification of

24

the interlocutory appeal is proper. The Court GRANTS the Motion and certifies to the Ninth

Circuit for interlocutory appeal the two questions Defendants identify—whether the Court has

subject matter jurisdiction and whether Plaintiffs may pursue their constitutional claims. The

Court STAYS this matter pending resolution of the appeal.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 11, 2024.

Marsha J. Pechman
United States Senior District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2024, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I have served the petition and accompanying exhibits via email on all counsel who have appeared in the district court case.

By: */s/ Lauren C. Bingham*
LAUREN C. BINGHAM
Senior Litigation Counsel
United States Department of Justice
Civil Division